May it please the Court, I'm David Mayberry, Counsel for Money Management, Inc. The District Court made three errors that require reversal in this case. First, the District Court reduced the Totality of Circumstances test to a single factor. Second, the District Court did not view the evidence on priority in the light most favorable to MMI. And third, the District Court erroneously held that the trademark infringement and unfair competition claims in suit arise out of the party's co-branding agreement. By statute, use means the bona fide use of a mark in the ordinary course of trade and not made merely to reserve a right in the mark. In this case, the District Court held money management to too high a standard. Quoting the Department of Parks and Recreation case, the District Court held that MMI must prove it actually used the mark in such a manner that sufficiently associated the mark with the provision of credit-related services. This sufficiently public factor is only one of several factors the District Courts are guided to consider. And it usually is controlling in a case involving a different fact pattern, namely where no sales are made under the mark and the basis for the claim of priority is the non-sales activities and advertising activities. Now, with respect to the advertising activities of MMI, the District Court also did not view the evidence on this factor, let alone the other factors in the light most favorable to MMI. For example, the District Court held no evidence is offered that consumers saw or took these brochures. The record shows otherwise. Well, didn't the District Court make sort of a practical determination? It's looking at was there a genuine issue of material fact? Was there enough to create one? There was some evidence in the record. There was the deposition, the Radoff deposition. But the District Court says, look, that's the evidence. It's vague. That's the best evidence they have. And there's other evidence that contradicts it, like the Ray deposition. There's the Stanley deposition, which is very vague and ambiguous. There's simply not enough here to go to trial. What was wrong with that sort of practical determination? We have cases that say contradictory, ambiguous, vague facts are not enough to create a genuine issue of material fact. Well, Judge Akita, first of all, the District Court did not consider all of the evidence and resolved disputed genuine issues of material fact against MMI. For example, on the issue of brochures, the District Court said there is no evidence they're taking them, but an email says, and I quote, consumers have been taking the pamphlets and asking to set appointments with us for the service. No, your opposing counsel says that wasn't really before the District Court. That email occurs on page 412 of the record, and you'll see it is in the very same string of an email that Consumer Info put into the record to demonstrate no use. You have to read the email in context, and it was in the record. It was clearly there. So if it was attached to a deposition, was it brought to the attention of the District Court, I guess would be the question. Yes, this email was brought to the attention and cited in Consumer Info's papers, and you can't read part of the email without reading the rest of it. And, you know, the additional things, Ruff Justice, I guess was your question, the District Court is just not entitled to weigh evidence and resolve disputed issues. The District Court said there was only evidence of some 3,000 brochures and only $70 in sales. The record showed much more than that. The record showed that Lipka testified in her deposition that she asked for 500 to 1,000 brochures to be sent to each of the branch offices. Stanley testified to 10 branch offices. That's 10,000 brochures. Lipka testified, pardon me, Radoff testified that he received 1,000 brochures in 2003, another 1,000 when his supply guy ran out, and that he easily ordered a comparable supply more than 10 times. That's another 22,000 brochures. The judge was weighing evidence, resolving disputed issues of fact. Don't we have this Chance case where they had, what, like 35,000 brochures? Yes. And postcards. And the court says not enough to create an issue. Chance is a very strong case in favor of NMI. It's very distinguishable. In that case, all of the activities that the junior user claimed gave it priority took place after the senior user publicly announced the mark, made a big splash of it, and the senior user was actually the first person to publicly go out with the mark. The junior user just then came in and said, I've got 35,000 brochures, and I've sold them to the trade. And the junior user was not absolutely first, as in this case, where the evidence is uncontradicted. NMI went out first, both with offering the service and providing the service and selling it. Mr. Mayberry, Judge Gould has a question for you, please. What was Mr. Ray designated for under 30B-6? Your Honor. Did it cover distribution or just production of the brochures? Your Honor, two witnesses were designated. It's not clear in the record the purpose of what they were designated for, but what is clear when you read the deposition of Mr. Ray, that his knowledge was about production, generation of brochures. All of these e-mails, the ones Judge Akuta talked about, are in the context of his production of brochures. And Stanley was the other 30B-6 deposition witness who testified about the circulation and the dissemination of the brochures. Mr. Ray was back in the home office in Houston. His job was to print brochures and send them out. He did not work out in the field like Stanley did. Stanley was in charge of this program and was based in the Western Division where this program was birthed. Thank you. I would only add a couple of other points on the issue of not viewing the evidence in the light most favorable. I think it's important to look at the other chance factors, and we see that MMI's activities were clearly reasonable in scope for a nonprofit organization with an educational mission. Advertising with posters and brochures is clearly reasonable. Now, your opposing counsel in their briefing says this is a $45 million nonprofit. This isn't just a little corner store here. So why does that make the ad activities reasonable in scope? I think we need to look at the $45 million business, and the $45 million is in debt consolidation where it's the primary business of MMI where it consolidates debts and pays them on behalf of the consumers to the creditors. The counseling services, which are shown in Form 990 in the record at page 177, relatively, that business was relatively modest. The entire counseling fees were only $65,000. So you have to look at the business, the goodwill represented by the trademark. The company had $44 million of revenue overall, but this is a small program, a small part of the company. I'd like to turn, if I may, to the question of attorney's fees for the sake of time. On this issue, the district court erred in interpreting the co-branding agreement to provide attorney's fees in this case. To begin with. Doesn't the very term of that contract, however, say, in the event of litigation between the parties, the prevailing party shall be entitled to reasonable attorney's fees in addition to other relief? It says that out of context, Your Honor. Out of context. Well, if I read it in the context, it didn't say anything before that in any paragraph or after that in any paragraph that suggests that it's only limited to this particular agreement. Well, respectfully, I would not read the contract that way, Your Honor. Well, where in the contract does it say it's only limited to this agreement? It says in the first sentence of the paragraph, all actions arising out of this agreement shall be subject to Isn't that regarding the choice of law part of the agreement? It is, Your Honor. So it seems like the literal language, you know, I have my mind open on it, but the literal language that Judge Smith mentioned would seem to permit an award of attorney's fees in any litigation between these parties. Although, of course, that issue would not have to be reached if we agree with your evidence weighing issue, right? It would not have to be reached if you agreed with our evidence weighing issue. I would agree with that, Your Honor. But like in your Steppenwolf case, I think the California statutes make it clear you must read a contract as a whole and not give it an interpretation that would lead to an unintended result. But the arising out of language does really go in the choice of law provision, correct? I would like to respond this way, Judge Smith. It is in the choice of law provision, okay? But if you just pluck that provision out, then it would lead to a very strange result. As I said in my brief, if MMI would have sued Consumer Info for antitrust violation and one, that it violated Section 2 of the Sherman Act by monopolizing the sale of credit reports, then under this obscure provision and in this agreement, Consumer Info would have to pay its attorney's fees. Well, isn't this just kind of a, however, a little bit different argument? Because you really did argue before the district court that your idea was that there was a licensor, and saying that the co-branding agreement made MMI a licensee of Consumer Info's marks and therefore Consumer Info could not sue MMI for infringement. Now your argument suggesting that embodied the very agreement we're looking at, the district court didn't follow you, but then what you now want to do is make that argument to the district court embodying the agreement and then take this agreement out of it. How do I make those differences? The argument that was made to the district court failed. But you made it. The client made the argument unsuccessfully. There is no estoppel here. No one relied on that argument. So you can make an argument that the agreement matters as it relates to an argument you're making to the district court, but now come here on appeal and say it has no bearing whatsoever and is totally irrelevant to the issue? That's really not the argument. This issue of attorney's fees, Your Honor, has to be governed by the language of the contract, giving effect to the intent of the parties, and we submit that when you read that contract as a whole, in its entirety, that it did not intend a result where involving different transactions and occurrences, a different subject matter, a plus score trademark that was not licensed under that contract, did not even exist when that contract was made. The parties would have intended this unusual result that the loser. Yes, sir. Mr. Mayberry, said schooled with a question. You know, I will go back and read the whole contract as a whole and reevaluate the point in light of your good argument on it, but I would rather hear you spend your precious time explaining why the summary judgment should be reversed. Okay, I will turn back to that. You have about 27 seconds. I will then respond to the question by saying that, again, I think the summary judgment should be reversed quite simply because the district court weighed evidence, resolved disputed genuine issues of material fact, and he can't do that. The case should go to the jury. Good morning, Your Honors. Peter Haviland for ConsumerInfo.com. I'd like to begin by addressing the question raised by Judge Gould a moment ago about Chris Ray. Chris Ray was designated as a 30B6 witness specifically on, quote, the marketing efforts and promotional activities of MyScore Plus. There was no limitation with respect to distribution versus production. He was the director of marketing for MMI, and he testified unequivocally about the advertising activities of MMI. He said he didn't know, right? I mean, he wasn't aware of it. I wasn't sure it was that inconsistent with what Mr. Radoff said. He said, are you aware? The question was, are you aware of MMI disseminating any written materials to the public? No. That doesn't mean that there weren't any. That just means that he wasn't aware of them. Well, there's also additional testimony, Your Honor, which I think is quite striking with respect to the scope of the advertising activities that MMI was engaged in. For example, in his deposition at 2SER 171 at SEC, there is a series of questions and answers. For example, did MMI run any Yellow Pages ad at any time containing MyScore Plus? I don't believe so. Did MMI ever had any billboards containing MyScore Plus? No. Has MMI ever run any newspaper advertisements containing MyScore Plus? No. Is it necessary for them to have done it? I mean, it appears that they were focusing on the brochures being disseminated to the public. Well, there is in all of these cases a threshold issue which the court, the district court, is required to address, which is is there sufficient advertising promotional activities to warrant a disputed issue of genuine fact on first use? Now, brochures being, first of all, distributed from one office, the Houston office, to the Phoenix office, which in the first instance MMI was asserting was reflective of commercial activities, clearly does not rise to a level of commercial activity. Internal distribution from one office to another does not. But there's evidence in the record that it went to the public. There's the e-mails, which opposing counsel says was before the district court, I think, contrary to the briefing. And there was also the Mr. Radoff's testimony that there were demands for these brochures so that there was some evidence in the record of the brochures being sent off to the public or being taken up by the public. Well, there is some evidence. The question is, is it sufficient evidence to raise a tribal issue of material fact, particularly when, for example, the court cites to Judge Friendly's opinion in Societe Anun, which is the balance of the equities also has to weigh on a determination of whether you are going to permit a jury to potentially take away from ConsumerInfo.com a mark which it properly registered, which it thoroughly advertised, promoted, and achieved a substantial presence in the public. Are you going to permit that mark and those rights to be taken away based on what is uniformly vague testimony outside of Mr. Ray? Now, Mr. Ray's, there were only two witnesses that were really designated as 30B6 witnesses below. That is, that responded to 30B6 deposition notices as 30B6 witnesses. One was Mr. Ray. So you have Stanley and Ray, correct? No, actually. Stanley and Ray? No, the other one was Johns. Okay. Ms. Johns and Ray were the only two who responded specifically to 30B6 notices. What happened was after the initial testimony of Mr. Ray was unfavorable, as other witnesses were deposed individually, MMI attempted to characterize their testimony insofar as it was helpful to them as additional 30B6 testimony. But if you look at the initial testimony of Chris Ray and the first declaration of Charles Stanley, you'll notice in the record there are two declarations submitted by Charles Stanley. The first declaration of Mr. Stanley talks about activities and exposure to the public in 2002, and then, quote, unquote, an aggressive marketing campaign in 2004. It doesn't say anything about 2003. And Mr. Ray talks about the fact that he's unaware of anything that was going on in 2003. Now, interestingly enough, Mr. Radoff's testimony, in which he has a recollection of there being activities in 2003, is juxtaposed to his recollection that there was actually nothing going on in 2002. But my point is that it is generally acknowledged that a 30B6 witness so designated who provides fairly clear testimony on a subject can't simply be. But, Mr. Haviland, let me express a question on that. You know, I would understand if you want to argue to a district court or a jury that the statement of a 30B6 witness on a subject within the designation scope is an admission that can be used against the company. But still, at least unless they've changed something, I never understood 30B6 to exhaust the evidence that could be submitted by other recipient witnesses that would be pertinent on a summary judgment motion. So, assuming that Ray gave testimony that's very adverse to money management, still, if the company, if money management submitted affidavits of other witnesses that supported its theory of the case, which I thought Stanley, you know, maybe was in that category, doesn't the district judge have to consider all the affidavits in deciding if there's an issue of fact? Well, the district judge clearly did consider all the affidavits. I'm simply referring to the general principle that it is not favored on summary judgment to consider affidavits. It's the so-called sham affidavit rule to try to save or create an issue of material fact in contradiction to admissions by the corporate designee. They weren't contradictory. That was my question originally. They were consistent. They were just somewhat different. Well, the point is, let me express it this way. From the vantage point of submission of actual evidence, that is, specific facts, that would bring forward an issue of material disputed fact that should go to a jury. Consumerinfo.com met its burden of showing that it had registered the mark first and that it had established that mark in commerce. The burden then shifted to MMI to bring forward specific facts that it had established first use. Now, what I'm saying is that the so-called evidence of Chuck Stanley, Jerry Radoff, all of these witnesses that are arguably supportive of MMI's position, suffer from a few consistent problems. One is that they are vague as to time in terms of did this so-called brochure distribution or commercial activity occur prior to September of 2003. In fact, so the evidence either reflects that it is simply unknown when that happened, or generally speaking, it talks to activity post-2004. Go ahead. I was going to say, but that's not exactly right, because there is a record in February 2002. I mean, I hate to chip off this evidence, but February 2002 an employee of CCCS stated that consumers had been taking MyScorePlus pamphlets, asking for appointments with us for the service, so the pamphlets were in the lobby and getting into the consumer. June, we're completely out of MyScorePlus brochures. Would it be possible to send us some more? January 2002 to September 2003, then I have Charles Stanley coming in and saying, there were 1,255 other counseling sections recorded in the ledgers, and he says the only services recorded in that other column were the services for MyScorePlus. Then I have Radoff saying during 2003 he sent out hundreds of MyScorePlus brochures. As a result of the counseling session, his supply ran out and he requested more. Now, if I just take those facts, because what you said is exactly where I was going, he's got to come up with something before you start saying, I have an intent to register this application to say he's doing something. But I guess my worry is with the standard of review. I appreciate your standard of review as it relates to you said you have the appropriate documents, and therefore you have what you need. Now, their standard of review, then I have to give them every intent of the fact. In other words, if they say it, I've got to give them credit that it's true and that it makes a difference. And then I've got to say that that is so incompetent that it doesn't meet the standard. Now, you tell me how I do that with those facts. All right. Well, let's take, for example, this issue of Chuck Stanley's saying he's got 1,200 examples of sales, which in the opening brief of the appellants, they say that should then be treated as sales, that you multiply that times $49 and you get $62,000 worth of sales. Well, I don't even need to say that. All I need to say is counseling sessions using this product that they say they have. Okay. But that evidence, if you look at the records that he produces, say nowhere on them that those are my score plus sessions. But he says they are. Well, okay, but it's contradicted, but that statement is contradicted by the documentary evidence in the record. Okay. So I'll show you how. He makes reference to a log that shows other counseling sessions. That is cross-reference to notes that were introduced separately that show notes of interviews with clients. Now, Mr. Stanley says that he attributes all of the other counseling sessions to my score plus sessions, that is that are in the western region and the call centers, because in those areas there was no other product. That was the only other counseling that they were doing. But if you look at the notes, there are multiple entries of notes where the customer is identified by geographic location, that is identified as an Arizona customer in which the notes expressly say, we're not talking about my score plus. The customer came in with his own credit report and didn't want to talk about my score plus at all, so we spent an hour talking about just his own credit score. Well, I guess this is the very thing that I would argue to the jury as to why I should win, but it doesn't seem to be the very thing that should say, on summary judgment, I should say you win. It should be something that one who is determining the question of fact ought to really determine. The things that the district court said to poo-poo this stuff did not relate even to your argument that you're making. Well, no, but what I'm saying is consistent, it seems to me, with the methodology of the district judge, which is completely appropriate in this case. The district judge has to be something of a gatekeeper as to what constitutes a bona fide issue of material fact and what is just junk evidence. He made the point that having brochures on display in the offices of MMI or CCSW doesn't tell us anything about how many consumers actually viewed those, how many took them. If we go back to Radoff, Radoff has testimony about sending out hundreds of brochures, but there's no evidence whatsoever that he provides as to whether there was any response. If you look at the New West case, part of the reason that the 450,000 magazines going out was viewed as contributing to establishing a presence in the public mind was because there were responses. People came back and actually bought the product. Now, the problem here is it is MMI's burden to come forward with specific facts, real evidence of sales and advertising. And, for example, there is only evidence, documentary evidence, of $70 in sales that was on a documentary record for the period prior to 2003. And if they don't come forward with something else... Mr. Haviland? Yes. You know, I read about the $70, which is the only entry that specifically says it's this product, but there is the testimony of, I thought it was Stanley, saying that the other category of sort of general revenue, that that reflected this kind of counseling because it was all they were doing. Now, you raised some counterpoints, but why don't they all just go to wait? Why does that not just go to wait that can be argued, but not resolved at a summary judgment? The reason is that there are plenty of cases which support, as the judge said previously, there are plenty of cases which say a declaration which is unsupported by any documentary evidence, particularly when MMI's vice president of IT and their corporate secretary testified that there was a seven-year document retention policy, there was a consistent basis as to how these counseling and other sessions were being recorded. If there's no documentary evidence supporting these self-serving allegations, it is appropriate for the district court not to treat that as sufficient evidence to create a triable issue of fact. Now, what I'm saying is that in this case we have more than that. We have declarations which are contradicted by the documentary evidence, and in a situation where you have a company like consumerinfo.com, which has established a significant mark that now is generating a million dollars a month in sales, it is inappropriate to permit a jury to invalidate that mark based on speculation, vague statements, self-serving declarations. If I may, just very briefly on the issue of the attorney's fees and the contract, I would just like to point out that throughout the co-branding agreement, I mean, first of all, I think it's clear that if you look at Section 17. You are out of time, so just wrap up very briefly, please. Okay. I would just point out that throughout the co-branding agreement, at various sections, there are references to trademark rights. And so not only the admission and the plain language of Section 17, which is a compendium of different clauses, but also the fact that these parties clearly understood that litigation over trademark rights was possible, given the extensive attention given to it, I think makes clear that the award of attorney's fees is appropriate. Thank you very much. You were out of time, did you? Do you have any questions? I don't have any questions. No, I don't have any questions. I would just have a comment that I think both counsel have made excellent arguments. Thank you. I realize I'm out of time, and I will be quiet if you tell me to, but without making a further argument, I would like to set the record straight if it's not allowed. I think we're done now. Thank you. Thank you. The case of consumerinfo.com v. Money Management is submitted. Next case. We'll take a five-minute break. We will take a five-minute break. Thank you.
judges: Gould, Ikuta, Smith N. R.